UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

TERESA CAMPAGNA, individually and
on behalf of all others similarly situated,

                                    Plaintiff,

                  -against-

CLIENT SERVICES, INC.,

                                    Defendant.

-------------------------------------------------------X

FILED
CLERK
2:08 pm, Dec 03, 2019
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**MEMORANDUM & ORDER**

18-CV-3039 (SJF)(ARL)

FEUERSTEIN, District Judge:

I.    Introduction

Plaintiff Teresa Campagna ("Plaintiff" or "Campagna") commenced this action against

defendant Client Services, Inc. ("Defendant" or "CSI"), alleging violations of the Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (*See* Complaint, ECF No. 1.)

Presently before the Court is Plaintiff's motion seeking summary judgment pursuant to Rule 56

of the Federal Rules of Civil Procedure (hereafter, "Summary Judgment Motion"). (*See* ECF

No. 26; *see also* Support Memo (ECF No. 26-3).) Defendant opposes the Motion. (*See* ECF

27 (hereafter, the "Opposition" or "Opp'n").) For the reasons that follow, the Motion is denied.

II.   Background

      *A. Factual History*[1]

             1. Undisputed Facts

Plaintiff is an individual residing in Nassau County, New York. (*See* 56.1 Stmt., ¶1.)

Defendant, a Missouri corporate entity with its principal place of business in Saint Charles

County, Missouri, "is regularly engaged, for profit, in the collection of debts allegedly owed by

---

[1]  The facts are taken from the parties' Rule 56.1 Statements (*see* ECF Nos. 26-1 (hereafter, "56.1 Stmt.") & 27-5 (hereafter, "56.1 Counter")), and Defendant's answers to Plaintiff's allegations. (*See* Answer (ECF No. 5).)

consumers." (*See* Answer, ¶¶7, 8, 50.)  There is no dispute that Plaintiff obtained a credit card

(hereafter, "Card") issued by Chase Bank USA, N.A. (hereafter, the "Bank" or "Chase") and,

subsequently, became delinquent in her payments due the Bank arising from her use of that Card.

(*See* 56.1 Stmt., ¶¶2, 4; 56.1 Counter, ¶¶2, 4.)  Nor is there a dispute that "[i]n its efforts to

collect the debt, Defendant contacted Plaintiff by letter (hereafter, the "Letter") dated March 7,

2018."  (Compliant, ¶14 (citing to the Letter, *attached as* Ex. 1 (ECF No. 1-1) to Complaint;

Answer, ¶14 (admitting Plaintiff's allegation).)

2. The Letter

In the subject Letter, directly under CSI's logo, appearing in the upper-left corner, the

Letter provided:

> RE: CHASE BANK USA, N.A.
> ACCOUNT NUMBER: xxxxxxxxxxxx9761
> BALANCE DUE: $7,085.58
> REFERENCE NUMBER: [Redacted]5942

Below this information runs a shaded header within which is written "SETTLEMENT OFFER".

(*See id.*)  The text of the Settlement Offer states:

> We are offering you a settlement amount of $3,667.00 to settle this
> CHASE BANK USA, N.A. account for less than the balance due.
> This offer is valid until 3/27/2018.  If payment in full or the
> settlement amount is not received in our office by this date, this
> offer will be withdrawn and will be deemed null and void.  We are
> not obligated to renew this offer.  If you are unable to pay the
> settlement amount in full by this due date, please contact our office
> for alternative payment options which may be available to you.

(*Id.*)  Beneath the text of the settlement offer is, *inter alia*, the following disclaimer:

> THIS COMMUNICATION IS FROM A DEBT COLLECTOR.
> THIS IS AN ATTEMPT TO COLLECT A DEBT.  ANY
> INFORMATION OBTAINED WILL BE USED FOR THAT
> PURPOSE.

(*Id.*) Thereafter, various methods for remitting payment were provided. The bottom of the Letter consists of a payment coupon which contains the reference number indicated at the top of the Letter and instructs that checks are to be payable to CSI and remitted to CSI at 3451 Harry S. Truman Blvd., St. Charles, MO 63301-4047, the same address included in its letterhead. (*See id.*)

Moreover, as indicated on the front of the Letter, on its reverse side the Letter provided important rights and privileges that applied to residents of various states, including New York. (*See id.*, reverse side.) The New York disclosure begins: "In accordance with the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., debt collectors are prohibits from engaging in abusive, deceptive, and unfair debt collection efforts . . . ." (*Id.*)

3. Disputed Facts

Defendant disputes that Plaintiff: is a "consumer" as that term is defined by § 1692a(3) of the FDCPA (*see* 56.1 Counter, ¶5); used the Card for personal expenses only (*see id.* at ¶3); and, received the Letter in or around March 2018 (*see id.* at ¶¶6, 7). Its disputes are founded upon Plaintiff's citation to her declaration, which was made pursuant to 28 U.S.C. § 1746. (*See* Campagna Decl. (ECF No. 26-2).) CSI further disputes it is a "debt collector" as that term is defined by § 1692a(6) of the FDCPA. (*See* 56.1 Counter, ¶9; *cf.*, 56.1 Stmt., ¶9 (citing Complaint, ¶¶7-8, 50; *and* Answer, ¶¶7-8, 50).) Regarding the subject Letter, CSI disputes Plaintiff's contentions that it: fails to "identify any entity as a 'creditor,' 'original creditor,' 'current creditor,' account owner,' or 'creditor to whom the debt is owed'" (56.1 Counter, ¶10); "states 'RE: Chase Bank USA, N.A.'" (*id.* at ¶12); does not clearly indicate to what "Re" refers (*see id.* at ¶13); and does not make clear the relationship between CSI and the Bank or to whom the debt is owed (*see id.* at ¶14).

*B. Procedural History*

On May 23, 2018, Campagna commenced this action against CSI alleging that the Letter violates §1692e because it fails to explicitly or clearly state the name of the creditor to whom the debt is owed. She also claims §1692e is violated because the Letter can be reasonably read by the least sophisticated consumer to have two or more meanings, one of which is inaccurate, thereby rendering it deceptive. That is, CSI violated § 1962e by using a false, deceptive and misleading representation in its attempt to collect a debt. Plaintiff also raises class action allegations, asserting she would fairly and adequately represent the interests of the proposed class who received similar collection letters from CSI, *i.e.*, collection letters that fail to identify any entity as the "creditor," "original creditor," current creditor," "account owner," or "creditor to whom the debt is owed." On July 3, 2018, Defendant answered Plaintiff's Complaint denying Plaintiff's § 1962e claim and raising several affirmative defenses. (*See* Answer, ECF No. 5.)

On April 1, 2019, Plaintiff moved for summary judgment and to certify this matter as a class action (*see* ECF No. 28).[2] Subsequently, CSI filed three Notices of Supplemental Authority in support of its opposition to the Summary Judgment Motion. (*See* ECF No. 30 (providing the Court with *Steffek v. Client Services, Inc.*, No. 18-cv-160, 2019 WL 1126079 (E.D. Wis. Mar. 12, 2019)); ECF No. 34 (providing the Court with *Stehly v. Client Services, Inc.*, No. 18-cv-5103 (DRH), 2019 WL 2646664 (E.D.N.Y. June 28, 2019)); *and* ECF No. 38 (providing the Court with *Ocampo v. Client Services, Inc.*, No. 18-cv-4326 (BMC), 2019 WL 2881422 (E.D.N.Y. July 3, 2019).) Plaintiff also filed a Notice of Supplemental Authority, but

---

[2] Plaintiff's Summary Judgment Motion was originally referred to the Magistrate Judge for a report and recommendation (*see* April 12, 2019 Electronic Order), but that referral was subsequently withdrawn (*see* May 9, 2019 Electronic Order).

in support of her Motion for Class Certification. (*See* ECF No. 40 (providing the Court with *Bitzko v. Weltman, Weinberg & Reis Co.*, 17-cv-458 (BKS), 2019 WL 4602329 (N.D.N.Y. Sept. 23, 2019).)

### C. The Parties' Positions

Plaintiff primarily argues that CSI has failed to adequately identify the owner of her debt in the Letter "such that it would be understandable from the perspective of the least sophisticated consumer." (Supp. Memo. at 1.) She further asserts that the Letter can reasonably be read by the least sophisticated consumer to have two or more meanings concerning the owner of the debt, but since only one of those readings can accurate, the Letter is inherently deceptive. (*See id.*) More specifically, Plaintiff complains that because there is no indication in the Letter regarding, *first*, the Bank's relationship to the debt, *i.e.*, whether it is the creditor, original creditor, account owner, or the creditor to whom the debt is owed, and, *second*, the relationship between the Bank and CSI, "the [L]etter fails to make clear, either explicitly or implicitly, who owns Plaintiff's debt." (*Id.* at 5.) Plaintiff also argues that failing to clearly set forth the owner of a debt is a *per se* material violation of the FDCPA. (*See id.* at 6 (citing, *inter alia*, White, 284 F. Supp. 3d at 362).)

In opposition, Defendant argues that because the Letter identifies only one creditor, even the least sophisticated consumer would know the identity of the creditor to whom the debt is owed; therefore, there is no violation of the FDCPA. (*See* Opp'n at 2-3.) Further, CSI encourages this Court to adopt the reasoning of other circuit courts "that the least sophisticated consumer cannot completely disregard her past history with a debt when reading a debt collection letter." (*Id.* at 5.) It contends that it is not reasonable to "isolate a single line from the [Letter] in assessing CSI's [FDCPA] liability," as "'[t]he least sophisticated consumer does not

start each day anew with no memory of the last; instead, [s]he has a 'reasonable knowledge of her account's history.'" (*Id.* at 5-6 (citing *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009)[3]).)  Defendant also asserts that since it is clear from the Letter that the Bank is the creditor to whom the debt is owed and because the FDCPA does not require the use of specific language, *i.e.*, proverbial "magic words", any claimed confusion regarding who is Plaintiff's creditor has been concocted, and in any event, the least sophisticated consumer would not be confused.  (*See id.* at 7-8.)  Finally, CSI argues that the cases upon which Plaintiff relies are distinguishable from her case, wherein Plaintiff presses the claim that the Letter does not *explicitly* state the name of the creditor to whom her debt is owed.  (*See id.* at 8-9.)

In reply, Plaintiff contends:

> The [least sophisticated consumer] would read this Letter and understand that Defendant is seeking to collect a debt which was accrued to a Chase Bank account (as Plaintiff admits), but that is not the same as advising the consumer of the name of the creditor to whom the debt is presently owed.  It is not enough to advise the consumer as to the basis or source of the debt[;] the FDCPA requires a debt collector to provide the name of the creditor to whom the debt is presently owed.

(Reply at 2.)  She argues that, based upon the payment instructions in the Letter, the least sophisticated consumer could believe CSI is the current owner of the subject debt or, alternatively, the Bank remains the creditor to whom the debt is owed, and that since, both interpretations are reasonable, but only one is correct, an FDCPA violation has been established, thereby entitling Plaintiff to summary judgment.  (*See id.*)

---

[3]  The Court notes that the quoted sentenced, cited as a quote from the *Wahl* case, is actually found in *Lait v. Medical Data Systems, Inc.*, No. 17-cv-378, 2018 1990513 (M.D. Ala. Apr. 26, 2018), *to wit*:  "The least sophisticated consumer does not start each day anew with no memory of the last; instead, he has a 'reasonable knowledge of h[is] account's history.'"  *Lait*, 2018 1990513, at *5 (quoting *Wahl*, 556 F.3d at 646).

III.   Discussion

   *A.  Motion for Summary Judgment Standard*

   Pursuant to Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *Kwong v. Bloomberg*, 723 F.3d 160, 164-65 (2d Cir. 2013); *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994) (holding summary judgment appropriate only where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law).  No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the nonmovant, that no rational jury could find in the nonmovant's favor.  *See Chertkova v. Conn. Gen'l Life Ins., Co.*, 92 F.3d 81, 86 (2d Cir. 1996).  Although the evidence is viewed in favor of the non-moving party, *see Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir.  2015), "the mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [fact-finder] could reasonably find for the [non-movanat]." *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir.  2005)(internal alterations and quotation marks omitted).  It is insufficient to "rely on conclusory allegations or unsubstantiated speculation" to defeat a summary judgment motion.  *Id.* (internal quotation marks omitted).  Instead, when the moving party has documented particular facts in the record, "the opposing party 'must set forth specific facts showing that there is a genuine issue for trial,'" *Williams v. Smith*, 781 F.2d 319, 323 (2d

Cir. 1986)(quoting Fed. R. Civ. P. 56(e)), which requires going beyond the allegations of the

pleadings. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted).

### B. The FDCPA

#### 1. Generally

Congress enacted the FDCPA "with the aim of eliminating abusive practices in the debt

collection industry, and also sought to ensure that 'those debt collectors who refrain from using

abusive debt collection practices are not completely disadvantaged." *Jacobson v. Healthcare*

*Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008) (quoting 15 U.S.C. § 1692(e)). The statute

should be construed liberally. *See Katz v. Sharinn & Lipshie*, PC, 12-cv-2440, 2013 WL

4883474, *1 (E.D.N.Y. Sept. 11, 2013)(collecting cases); *see also McStay v. I.C. Sys., Inc.*, 308

F.3d 188, 191 (2d Cir. 2002) (instructing that debt collection letters are to be analyzed as a

whole). To establish a violation of the FDCPA, a plaintiff must establish that: "(1) the plaintiff

is a consumer within the meaning of the [A]ct; (2) the defendant is a debt collector; and (3) the

defendant must have engaged in conduct in violation of the statute." *Coburn v. P.N. Fin'l*, No.

13-cv-1006, 2015 WL 520346, *3 (E.D.N.Y. Feb. 9, 2015) (internal quotation marks and citation

omitted). The FDCPA "is a strict liability statute and a single violation is sufficient to establish

liability." *Gonzalez v. Healthcare Recovery Mgmt., Inc.*, No. 13-cv-1002, 2013 WL 4851709, *2

(E.D.N.Y. Sept. 10, 2013); *see also Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130, 133-35

(2d Cir. 2010).

#### 2. The "Least Sophisticated Consumer" Standard

In the Second Circuit, when analyzing whether a communication violates the FDCPA,

"courts apply an objective standard based on the 'least sophisticated consumer.'" *Dewees v.*

*Legal Servicing, LLC*, 506 F. Supp.2d 128, 132 (E.D.N.Y. 2007) (quoting *Clomon v. Jackson*,

988 F.2d 1314, 1318 (2d Cir. 1993)); *see also Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d

236, 239 (2d Cir. 2019); *Ellis* 591 F.3d at 135 (same). The "least sophisticated consumer"

standard is "measured by how the 'least sophisticated consumer' would interpret the notice

received from the debt collector." *DeSantis v. Comp. Credit, Inc.*, 269 F.3d 159, 161 (2d Cir.

2001) (quoting *Russell v. Equifax*, 74 F.3d 30, 34 (2d Cir. 1996)). Therefore, courts "must

analyze 'collection letters from the perspective of a debtor who is uninformed, naïve, or trusting,

but is making basic, reasonable and logical deductions and inferences.'" *Dewees*, 506 F.

Supp.2d at 132 (quoting *Spira v. Ashwood Fin., Inc.*, 358 F. Supp.2d 150, 156 (E.D.N.Y. 2005));

*see also Kolbasyuk*, 918 F.3d at 239. Ultimately, whether a communication violates the FDCPA

depends upon "whether the notice fails to convey the required information clearly and effectively

and thereby makes the least sophisticated consumer uncertain as to the meaning of the message."

*Weiss v. Zwicker & Assocs., P.C.*, 664 F. Supp.2d 214, 216 (E.D.N.Y. 2009) (internal quotation

omitted). Thus, a collection letter may violate the FDCPA if it "could mislead a putative-debtor

as to the nature and legal status of the underlying debt, or that could impede a consumer's ability

to respond to or dispute collection." *Gabriele v. Am. Home Mortg. Serving, Inc.*, 503 F. App'x

89, 94 (2d Cir. 2012) (including communications which are "contradictory, vague or

threatening" as possibly violating the FDCPA).

> But in applying this standard, we bear in mind the Act's "dual
> purpose": in addition to protecting consumers against deceptive
> debt collection practices, *the objective test we apply protects debt
> collectors from unreasonable constructions of their
> communications*. [*Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d
> Cir. 1993)]. Even in "crafting a norm that protects the naive and
> the credulous," we have "carefully *preserved the concept of
> reasonableness*." *Id.* at 1319 [(emphasis added)]. Accordingly,
> the FDCPA does not aid plaintiffs whose claims are based on
> "bizarre or idiosyncratic interpretations of collection notices." *Id.*
> at 1320.

*Jacobson*, 516 F.3d at 90 (emphasis added).

Finally, it is well-established that for purposes of ruling on a FDCPA claim, debt collection letters should be analyzed as a whole. *See Dewees*, 506 F. Supp.2d at 132 (collecting cases); *see also Eger v. SW Credit Systems, L.P.*, No. 17-cv-819, 2019 WL 1574802, *4 (E.D.N.Y. Apr. 11, 2019).

### 3. § 1692e

Pursuant to 15 U.S.C. § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Although § 1692e identifies certain conduct that is considered "false, deceptive, or misleading," the list is non-exhaustive. *Id.*; *see also Tsenes v. Trans-Cont'l Credit & Collection Corp.*, 892 F. Supp. 461, 464 (E.D.N.Y. 1995) ("The sixteen subsections of § 1692e set forth a nonexhaustive list of practices that fall within this ban.").

> "Section 1692e mainly targets practices that take advantage of a debtor's naivete or lack of legal acumen." *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 136 (2d Cir. 2017). "A representation is 'deceptive' under [§] 1692e if it is 'open to more than one *reasonable* interpretation, at least one of which is inaccurate.'" *Id.* at 135 (quoting *Easterling*, 692 F.3d at 233)[(emphasis added)].

> Even if a representation is deceptive within the meaning of § 1692e, it must be a material misrepresentation in order to give rise to liability. *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 94 (2d Cir. 2012) (summary order) (collecting citations recognizing that courts generally read a materiality requirement into the FDCPA's prohibition on false, deceptive, or misleading debt collection practices); *see also Lane v. Fein, Such & Crane LLP*, 767 F. Supp.2d 382, 389–90 (E.D.N.Y. 2011) (finding that a misstatement was "not materially false or misleading" under the FDCPA). "The materiality inquiry focuses on whether the false statement would 'frustrate a consumer's ability to intelligently choose his or her response.'" *Cohen v. Rosicki, Rosicki & Associates, P.C.*, 897 F.3d 75, 86 (2d Cir. 2018). Accordingly, "'mere technical falsehoods that mislead no one' are immaterial" and do not give rise to liability under § 1692e. *Id.* (quoting *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010)).

*Navon v. Schachter Portnoy, L.L.C.*, No. 19-cv-63, 2019 WL 4306403, at *3 (E.D.N.Y. Sept. 11, 2019).

### C. The Present Case

#### 1. Defendant's Disputed Facts and Plaintiff's *Prima Facie* Case

Despite CSI's protestations to the contrary, there can be no dispute that Plaintiff is a "consumer" as that term is defined by the FDCPA. *See* § 1692a(3) (A "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt.") CSI does not dispute that Campagna is a natural person and, as evidenced by its own Letter, Campagna is allegedly obligated to pay a debt to the Bank. (*See also* Pl.'s Decl. (ECF No. 27-2), ¶¶4, 6.[4]) Therefore, upon the record presented, Plaintiff has established she is a "consumer" under the FDCPA, thereby satisfying the first element of her FDCPA *prima facie* case.

CSI's dispute that it is a "debt collector" as that term is defined under the FDCPA fares no better.[5] In its Letter, CSI holds itself out to be a "debt collector." (*See* Letter (front page).) It further admits it "regularly engages in debt collection." (*See* Answer, ¶50 (admitting Plaintiff's allegation that it "regularly engages in debt collection").) Moreover, CSI specifically references

---

[4] Pursuant to Local Civil Rule 56.1(d), "Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible . . . ," which, according to the accompanying Committee Note, is the "specific evidence of the kind required by Fed. R. Civ. P. 56(c)." Rule 56(c) contemplated the use of, *inter alia*, declarations to support or oppose summary judgment motions, but such declarations "must be made on personal knowledge" and set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4). Here, Plaintiff's Declaration is made pursuant to 28 U.S.C. § 1746 and made upon her personal knowledge; it comports with Rule 56(c)(4) and will be considered by the Court in deciding the Summary Judgment Motion. Hence, CSI's objection to same is overruled.

[5] A "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debt, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." 15 U.S.C. § 1692a(6).

the FDCPA in its Letter when referring to debt collectors in its New York state-required disclosure of rights and privileges. (*See id.*, reverse page).) Hence, CSI's dispute that it is a debt collector within the context of the FDCPA is disingenuous. Indeed, the record clearly establishes CSI to be debt collector pursuant to the FDCPA, thereby satisfying the second element of Plaintiff's *prima facie* FDCPA case.

What remains is the third element, *i.e.*, demonstrating Defendant violated some provision of the FDCPA. Plaintiff alleges that CSI violated § 1692e; more particularly, as evidenced by the context of her Compliant, Plaintiff seeks to establish a violation of subparagraph (10) of § 1692e, "a catch-all provision that bars '[t]he use of any false representation or deceptive means to collect or attempt to collect any debt . . . .'" *Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 194 (2d Cir. 2015)(quoting § 1692e(10)). (*See, e.g.*, Complaint, ¶¶21, 43-47.) Whether Plaintiff can establish this final element of her *prima facie* FDCPA case is a matter of law to be determined by the Court applying the least sophisticated consumer standard. *See Quinteros v. MBI Assocs., Inc.*, 999 F. Supp.2d 434, 437 (E.D.N.Y. 2014)("[B]ecause the least sophisticated consumer standard is objective, the determination of how the least sophisticated consumer would view language in a defendant's collection letter is a question of law." (quoting *Castro v. Green Tree Servicing LLC*, 959 F. Supp.2d 698, 707 (S.D.N.Y. 2013)).

### 2. Plaintiff's § 1692e Cause of Action

The Court notes that Plaintiff does not identify the Letter as an initial communication from CSI (*see* Complaint, *in toto*), which, presumably, is the reason that she did not bring a claim pursuant to § 1692g. *See Lugo v. Foster & Garbus, LLP*, No. 19-cv-1435, 2019 WL 5303957, at *2 (E.D.N.Y. Oct. 21, 2019)("Section 1692g(a)(2) of the FDCPA requires debt collectors to inform consumers of 'the name of the creditor to whom the debt is owed' '[w]ithin

five days after the initial communication with a consumer in connection with the collection of any debt." (quoting § 1692g(a))).  (*Cf.*, Campagna's Depo. Tr., 41-42 (ECF No. 27-1 at 6-7)(testifying to having seen a January 3, 2019 letter from CSI but not remembering having received it).)  As Judge Ross recently stated in *Lugo*:

> It is unclear whether a failure to identify the current creditor in a communication subsequent to the initial disclosure required by Section 1692g(a) is actionable under the catchall provision of Section 1692e(10).  At least one court has held that it is not.  *See Hammett v. Allianceone Recievables Mgmt.*, No. 11-3172, 2011 WL 3819848, at *5 (E.D. Pa. Aug. 30, 2011) ("Section 1692e—including subparagraph 10—does not impose any obligation to disclose the creditor's name.").

*See id.*  Lugo, like Plaintiff, alleged a FDCPA violation pursuant to § 1692e only; indeed, their Complaints are virtually identical.[6]  *See id.*; (*cf.*, Campagna Complaint (ECF No. 1), with *Lugo*

---

[6]  The Court is hard-pressed not to question whether this nuanced § 1692e claim, the only cause of action raised, is being pursued in the hopes of finding a new avenue to FDCPA violations given the carefully crafted Complaint here, as well as in *Lugo* and *Stehly v. Client Services, Inc.*, No. 18-cv-5103, 2019 WL 2646664 (E.D.N.Y. June 27, 2019)(filing virtually identical compliant as in the instant case and *Lugo*).  Indeed, as Judge Glasser has recently observed, in stating that the FDCPA is intended to prevent debt collectors from trying to trap unsophisticated debtors and is not intended as a trap for compliant debt collectors:

> Sadly, abuse of the statute is unsurprising given the development of the law in this area, and the Court suspects such abuse is fairly widespread.  In 2006, the Court observed that "[t]he interaction of the least sophisticated consumer standard with the presumption that the FDCPA imposes strict liability has led to a proliferation of litigation in this district." *Jacobson* v. *Healthcare Fin. Servs., Inc.*, 434 F. Supp.2d 133, 138 (E.D.N.Y. 2006), *aff'd in part, vacated in part, rev'd in part*, 516 F.3d 85 (2d Cir. 2008).  Since then, the number of FDCPA cases filed yearly in this District has more than quintupled.  And small wonder, when all required of a plaintiff is that he plausibly allege a collection notice is "open to more than one reasonable interpretation, at least one of which is inaccurate." *Clomon* v. *Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993).  This standard prohibits not only abuse but also imprecise language, and it has turned FDCPA litigation into a glorified game of "gotcha,"

Compliant, Case No. 19-cv-1435 (ECF No. 1)). Yet, "conclud[ing] that the standard under

Section 1692g(a)(2) was met," Judge Ross "assume[d] without deciding that [Lugo] ha[d] a

viable claim under Section 1692e(10)."[7] *Id.* The question remains, then, whether the failure to

identify the current creditor in a communication subsequent to an initial disclosure, which is

subject to the requirements of § 1692g(a), is actionable under § 1692e or the catchall provision

of § 1692e(10). For the reasons that follow, the Court finds that in the instant case it is not.

In essence, Plaintiff seeks to require the FDCPA's § 1692g initial disclosures be applied

to all subsequent communication with a consumer; where that does not occur, she would have

the Court find an FDCPA violation. Yet, this Court agrees with the *Hammett* court that "Section

1692e—including subparagraph 10—does not impose any obligation to disclose the creditor's

name." *Hammett*, 2011 WL 3819848, at *5; *see also, e.g., Community for Creative Non-

Violence v. Reid*, 490 U.S. 730, 739 (1989)("The starting point for our interpretation of a statue

is always its language."). This is so because, as Judge Cogan has observed:

> [t]he least sophisticated consumer does not read a debt collection
> letter in complete isolation from her financial history. *See Helman
> v. Bank of Am.*, 685 F. App'x 723, 728 (11th Cir. 2017) (holding
> that the "least sophisticated consumer in [plaintiff's] position
> necessarily would have had at least" certain knowledge of her
> financial history). Just as the least sophisticated consumer is
> "neither irrational nor a dolt," *Ellis*, 591 F.3d at 135, the least

---

> with a cottage industry of plaintiffs' lawyers filing suits over
> fantasy harms the statute was never intended to prevent.

*Kraus v. Prof'l Bureau of Collections of MD, Inc.*, 281 F. Supp.3d 312, 322 (E.D.N.Y.
2017)(footnote omitted); *see also id.* at 322 n.8 (noting that more than 1,000 FDCPA cases were
filed in the E.D.N.Y. in 2017, compared with 201 such cases filed in 2006).

[7] Judge Ross ruled likewise in *Taylor v. MRS BPO, LLC*, where the "plaintiff's lone cause of
action ar[o]se[] under Section 1692(10)." No. 17-cv-1733, 2017 WL 2861785, at*2 (E.D.N.Y.
July 5, 2017)("Because I conclude that the standard under Section 1692g(a)(2) was met, I
assume without deciding that plaintiff has a viable claim under Section 1682e(10).")(finding
subject communication adequately disclosed the current owner of plaintiff's debt; granting
defendant's motion to dismiss).

sophisticated consumer possesses "reasonable knowledge of her account's history."  *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009).

*Ocampo*, 2019 WL 2881422, at *2; *see also Donaeva v. Client Services, Inc.*, No. 18-cv-6595 (BMC), 2019 WL 3067108, at *2 (E.D.N.Y. July 12, 2019)( "'[E]ven the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care.'" (quoting *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005)(internal quotation marks omitted)).

The collection letter in *Ocampo* was a "Debt Validation Notice", which was CSI's initial communication to Ocampo.  *See Ocampo* Compliant, Case No. 18-cv-4326, ECF No. 1, ¶15 ("The Letter was the initial communication Plaintiff received from Defendant.").  The *Ocampo* collection letter:

> state[d] "Re: Synchrony Bank Walmart MC" and, in the lines below, provide[d] plaintiff's account number and the balance due, which was $6,490.19.  The letter d[id] not otherwise refer to Synchrony Bank Walmart MC.

*Ocampo*, 2019 WL 2881422, at *1.  Ocampo alleged the collection letter violated §§ 1692g and 1692e.  (*See id.*)  In finding the letter did not violate § 1692g, Judge Cogan wrote, *inter alia*:

> Here, the least sophisticated consumer in plaintiff's position would understand that she has a Walmart credit card, and she can match the account number for this credit card with the account number on the letter.  She may not understand the exact relationship between Synchrony and Walmart, but she does not have to be an expert on credit card processing to match the Synchrony Bank Walmart credit card referenced in the debt collection letter to the Synchrony Bank Walmart credit card in her wallet that she used to incur thousands of dollars in unpaid debt.

*Id.*  Further, in rejecting Ocampo's § 1692e claim, Judge Cogan asks, rhetorically, "What possible interpretation of the name, account number, and amount due could plaintiff have besides that which was clearly intended?"  *Id.* at *3.  He continues by stating, "This is her Walmart credit

card: it simply cannot be anything else. * * * If she doesn't know that it is her Walmart credit card that is being collected, her sophistication level is below that of the least sophisticated consumer." *Id.*

The nuance of this case is that Campagna bases her alleged FDCPA § 1692e violations, not on a CSI "Debt Validation Notice" letter, as in *Ocampo* but, on a subsequent "Settlement Offer" letter. Nor is this the only case in which Plaintiff's counsel has presented this new variation on alleged § 1692e violations; Judge Hurley recently ruled on such an action and settlement offer letter in *Stehly v. Client Services, Inc.*, No. 18-cv-5103, 2019 WL 2646664 (E.D.N.Y. June 27, 2019). There, ruling upon a Rule 12(c) motion for judgment on the pleadings, Judge Hurley found the settlement offer letter: implicitly made clear the name of the creditor to whom the debt was owed where, *inter alia*, the the subject line of that letter referred to Chase, together with Stehly's account number, *see id.* at *4 (quoting *Taylor*, 2017 WL 2861785, at *3 (finding the reference to the creditor, Chase, together with plaintiff's account number "strongly suggest[ed]" Chase was the plaintiff's current creditor)); and, was not false, deceptive or misleading to the least sophisticated consumer because "[w]hen read in its entirety, the Letter implicitly makes clear that Chase is the current creditor to whom the debt is owed, and [CSI] is the debt collector." *Id.* at *5 (noting "three references to Chase, the inclusion of Plaintiff's Chase account number, the statement that settling the debt for less than the full amount may result in rejection by Chase on future Chase product applications, and the disclosure that the Letter [wa]s a 'COMMUNICATION FROM A DEBT COLLECTOR'").

Other than the obvious differences in the addressees, balance amounts and account numbers, the subject Letter and the *Stehly* settlement offer letter are practically the same with the exception that the *Stehly* settlement offer letter contained a sentence with an asterisked not found

in the subject Letter, *to wit*: "* If we settle this debt with you for less than the full outstanding balance, Chase may offer you less favorable terms in the future for some Chase products or services, or may deny your application." *Stehly* Settlement Offer Letter, No. 18-cv-5103, ECF No. 1-1 (attached as Ex. 1 to Complaint). However, this absence does not compel an outcome different from the one reached by Judge Hurley.

> Even the least sophisticated consumer, armed with the knowledge that she has a [Chase] credit card, is not as lacking in financial acumen as [P]laintiff contends, and no reasonable jury could find otherwise. If she is able to fill out the [Chase] credit card application, she is able to comprehend that a reference line in a collection letter to [Chase] refers to her [Chase] credit card, especially when she has used it to charge thousands of dollars in purchases.

*Ocampo*, 2019 WL 2881422, at *1. Further, "the least sophisticated consumer possesses 'reasonable knowledge of her account's history.'" *Id.* at *2 (quoting *Whal*, 556 F.3d at 646)). This, in conjunction with the presumption that the least sophisticated consumer "possess[es] a rudimentary amount of information about the world and a willingness to read a collection notice with some care," *Greco*, 412 F.3d at 363, and the Second Circuit's directive that "courts should apply the standard in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices," *Easterling v. Collectco, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012)(internal quotation marks omitted), persuades the Court that the subject Letter does not violate § 1692e.

The Court presumes the least sophisticated consumer would have knowledge about a credit card account where: she has applied for said credit card: used the credit card to incur goods and/or services costing thousands of dollars; and, thereafter, falls behind on her payments to the issuing credit card lender. *See, e.g.*, *Ocampo* at *1 (stating "[e]ven the least sophisticated consumer, armed with the knowledge that she has a [certain] credit card, is not as lacking in

financial acumen as plaintiff contends"); *see also, e.g., Wahl*, 556 F.3d at 645 (stating an

"'unsophisticated consumer' isn't a dimwit . . . [but,] has 'rudimentary knowledge about the

financial world' and is 'capable of making basic logical deductions and inferences'" (citations

omitted)).  Similarly, the Court presumes that the least sophisticated consumer would also have

knowledge of receiving subsequent dunning letters regarding the delinquencies on such a credit

card account as that, too, would be part of the reasonable knowledge regarding one's account

history with which the least sophisticated consumer is presumed to have.  *See id.* at *2.  Indeed,

recently, the Eleventh Circuit persuasively reasoned that a least sophisticated consumer reads a

communication aware of prior communications, since to conclude otherwise would mean "that a

single potentially ambiguous communication would override a series of clear and unambiguous

communications to the contrary[, which] is exactly the type of 'bizarre or idiosyncratic

interpretation of collection notices' to which we have refused to give protection even under the

least sophisticated consumer standard."  *Helamn v. Bank of Am.*, 685 F. App'x 723, 729 (11th

Cir. 2017)(applying the FDCPA's least sophisticated consumer standard to plaintiff's claims

brought pursuant to the Florida Consumer Collection Practices Act); *see also Lait*, 2018 WL

1990513, at *5 (in assessing a collection communication, relying upon *Helman*, because "th[at]

court took pains to explain that a notice sent by a [debt] collector is not to be read in isolation

and that the least sophisticated consumer brings her prior knowledge with her when reading debt

communications" (block quoting *Helman*, 685 F. App'x at 728-29)).

    Utilizing those presumptions, the subject Letter cannot be found to violate § 1692e.  First,

this Court agrees with the *Hammett* Court that § 1692e does not impose any obligation to

disclose the creditor's name.  *See* 2011 WL 3819848, at *5.  Second, when read in its entirety

and in context of the Plaintiff's financial history regarding this account, it is clear that CSI was

acting as a debt collector for Chase on Plaintiff's account with Chase, as easily verifiable even by the least sophisticated consumer using that account's unique identifier number. *See, e.g., Taylor*, 2017 WL 2861785, at \*3 ("Even an unsophisticated consumer could match the last four digits of the account number to her former credit card and recognize that the 'CLIENT ACCT#' referred to her account with the [creditor]."); *see also, e.g., Stehley*, 2019 WL 2646664, at \*4 ("'[T]he subject line of the Collection Letter identifies both the Creditor, Chase, and plaintiff's account number with Chase Bank. This 'strongly suggests' that Chase is the current creditor.'" (quoting *Taylor*, 2017 WL 2861785, at \*3; further citation omitted)); *Lugo*, 2019 WL 5303957, at \*3 (same). To read the subject Letter, a settlement offer letter, in isolation and ignoring the full extent of Plaintiff's financial history regarding her Chase credit card account, *i.e.*, having received other letters regarding the debt (*see* Pl.'s Depo. Tr., 52:6-12 (in response to question about setting aside the Letter, testifying: "I do remember this because *this was the last letter I remember receiving*. I put it aside because *it was one of* – something I had to address . . . ." (emphasis added))), would be to eliminate the reasonableness component of the least sophisticated consumer standard, which the Court declines to do. Moreover, like Judge Hurley in *Stehly*, this Court "is not persuaded that there are any reasonable but inaccurate interpretations of the Letter that would render the communication false, deceptive, or misleading to the least sophisticated consumer," because "[w]hen read in its entirety, the Letter implicitly makes clear that Chase is the current creditor to whom the debt is owed, and Defendant is the debt collector." 2019 WL 2646664, at \*5 (citation omitted). "Here, even the least sophisticated consumer would comprehend that Defendant is collecting the debt on behalf of the creditor, Chase, in light of the [two] references to Chase, the inclusion of Plaintiff's Chase account number, \* \* \* and the disclosure that the Letter is a 'COMMUNICATION FROM A DEBT COLLECTOR.'" *Id.*

(citing subject letter); *see also Lugo*, 2019 WL 5303957, at *3 ("The instant Collection Letter refers to the creditor twice, by stating 'Re: [bank].' The rest of the letter provides context for the consumer to understand that [bank] is the creditor, and therefore, the communication sufficiently identifies the creditor and is not confusing."). Nor, as the *Stehly* Court found, does "[t]he . . . fact that the Letter instructs Plaintiff to make checks payable to Defendant . . . mean that the least sophisticated consumer would be uncertain as to the identity of the creditor." *Id.* (citation omitted). In sum, there was no false, deceptive, or misleading representation in the subject Letter that would mislead or confuse the least sophisticated consumer regarding the debt CSI sought to collection. Thus, upon the record presented, no § 1692e violation can be had.

Finally, the Court notes is disagreement with Plaintiff's contention that the cases upon which she relies are "directly on point." (Reply at 5; *see also id.* at 5-8 (citing *White v. Prof'l Claims Bureau, Inc.*, 284 F. Supp.3d 351 (E.D.N.Y. 2018); *Datiz v. Int'l Recovery Assocs., Inc.*, No. 15-cv-3549, 2018 WL 3751920 (E.D.N.Y. July 27, 2018), *report & recommendation adopted by* WL 4561461 (E.D.N.Y. Sept. 24, 2018); *Guarsci v. MRS BPO, LLC*, No. 17-cv-3679, slip op. (E.D.N.Y. Oct. 24, 2017); *McGinty v. Prof'l Claims Bureau, Inc.*, No. 15-cv-4356, 2016 WL 6069180 (E.D.N.Y. Oct. 17, 2016); and *Diaz v. Prof'l Claims Bureau, Inc.*, No.16-cv-2184, slip op. (E.D.N.Y. Nov. 27, 2017) (hereafter, collectively, "Plaintiff's Proffered Cases").) Rather, as Defendant argues, they are distinguishable. (*See* Opp'n at 8-9.) *See also Lugo*, 2019 WL 5303957, at *2 (acknowledging as correct, plaintiff's contention that "some '[c]ourts within this District have held that a singular and unadorned reference to an entity other than the debt collector with nothing more than a 're:' in the header of the letter does not meet the FDCPA,'" citing, *inter alia*, Plaintiff's Proffered Cases, but stating that "faced with similar letters, other Courts have come to the opposite conclusion" "that 'unadorned' references to the creditor can, in

some contexts, be sufficient identification [and, t]h[o]se cases are persuasive, and contradict plaintiff's proposed rule that a collection letter identifying the creditor by stating 'Re: 'Creditor name'' is never sufficient" (*citing, inter alia*, *Stehly*, 2019 WL 2646664, at *4; *Ocampo*, 2019 WL 2881422, at *2; and, *Eger*, 2019 WL 1574802, at *5)). Most notably, in each of Plaintiff's Proffered Cases, each court's finding of § 1692e violations was primarily premised upon its rationale for finding a § 1692g violation.[8] However, the Court cannot say whether the § 1692e violations found in Plaintiff's Proffered Cases would have been found independent of § 1692g violations. That factor alone greatly diminishes the applicability of Plaintiff's Proffered Cases to the instant one.

* * *

As Judge Cogan aptly stated:

> Cases like this – litigation over whether an innocuous debt collection letter is in technical compliance with the FDCPA – are far afield from the original intent behind the FDCPA, *i.e.*[,] preventing "collection abuses such as use of obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (internal quotation marks omitted). That is not what happened here at all. Rather, this is a "lawyer's case," by which I mean that it alleges a defect of which only a sophisticated lawyer, not the least sophisticated consumer, would conceive.

---

[8] That is, courts have found that a failure to identify a creditor in violation of § 1692g(a)(2) is also a false, deceptive, or misleading representation for purposes of § 1692e. *See McGinty*, 2016 WL 6069180, at *6; *see also Datiz*, 2016 WL 4148330, at *12 (denying a motion to dismiss a claim arising under 15 U.S.C. § 1692e where the plaintiff adequately stated a claim arising under § 1692g(a)(2)); *Lee*, 926 F. Supp.2d at 486-88 (holding that allegations that the defendant failed to identify the plaintiff's current creditor were sufficient to state a claim for violation of both § 1692g and § 1692e of the FDCPA); *cf., e.g., Taylor*, 2017 WL 2861785, at *3 (where § 1692g(a)(2) standard was met, assuming without deciding that plaintiff had a viable § 1692e(10) claim).

*Ocampo*, 2019 WL 2881422, at *3.[9]  "[I]f courts interpret the FDCPA to have as low a bar as

[P]laintiff's counsel argues here, they would end up hurting the least sophisticated consumer by

making her pay higher interest rates, collection costs, or depriving her of access to credit at all,

rather than helping her."  *Id.*

---

[9]  In that vein, at her deposition, when testifying about having "put aside" the subject Letter,
Plaintiff further testified:

> A:  I put it aside because it was one of – something I had to address, and I have a friend
> of mine that looked it over also.  She said something is not right here, and she
> recommended that I call the law firm, and I did.
> Q:  Who was that friend?
> A:  She was – her name is Nicole.
> * * *
> Q:  Can you please give me Nicole's last name?
> A:  I really don't know it, to be honest, but her husband is a lawyer within their firm.
> Q:  When you say "their firm," do you mean Mr. Cader's [*i.e.*, Plaintiff's counsel's] firm?
> A:  Yes.
> Q:  So you showed the [Letter] to your friend Nicole, and then Nicole's husband is a
> lawyer with Mr. Cader's firm?
> A:  Yes.
> Q:  And Nicole was the one that advised you that the letter looked – you said something
> was wrong with the letter?
> A:  Yeah.
> Q:  What did she specifically say was wrong with the letter?
> A:  Well, she brought to my attention that the way it's worded – the words I have been
> using, "conflicting" and "confusing."  We had been discussing my finances, and I showed
> her this letter that I had received, and she suggested that I contact them to see if they
> could help me with my finances.

(Pl.'s Depo. Tr. at 52:11-53:22.)  *Cf., Kraus*, 281 F. Supp.3d at 321-22 ("Given the innocuous
nature of the Letter, the Court could not help but wonder:  How did Kraus find herself in federal
court?  This question was posed to plaintiff's counsel . . . and his answer is enlightening:
"[F]inancial distress."  According to plaintiff's counsel, Kraus sought him out because "she's in
debt and she would like some guidance as to what she can do in terms of getting out."  In other
words, . . . Kraus did not seek an attorney because she felt abused, deceived, or otherwise
aggrieved; she did so because she wanted help getting out of debt.  The FDCPA is not a debt-
relief statute, however, and courts should not indulge thinly veiled attempts to use it as one."
(internal footnote and citations to hearing transcript omitted)).

The Court has considered the parties' remaining arguments and finds them to be without merit.

IV.     Conclusion

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Summary Judgment Motion is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion seeking class certification is denied as moot.

The Clerk of Court is directed to enter judgment in Defendant's favor and then close this case.

The December 10, 2019 Status Conference is marked off the Court's calendar.

SO ORDERED this 3rd day of December 2019 at Central Islip, New York.

/s/ *Sandra J. Feuerstein*

Sandra J. Feuerstein
United States District Judge